UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In Re:<br><br>David Orville Kingston,<br><br>                    Debtor. | Bankruptcy Case<br>No. 11-40128-JMM |
|---|---|
| David Orville Kingston,<br><br>                    Plaintiff,<br><br>vs.<br><br>Bank of America, N.A., et al.<br><br>                    Defendants. | Adv. Proceeding<br>No. 19-08003-JMM |

MEMORANDUM OF DECISION

**Appearances:**

Stephen Madsen, Idaho Falls, Idaho, Attorney for Plaintiff.

Thomas Abbott, Los Angeles, California, Attorney for Defendant Caliber Home Loans, Inc.

*Introduction*

Before the Court is a summary judgment motion filed by Defendant Caliber Home Loans ("Caliber"). Dkt. No. 135. David Kingston ("Plaintiff") opposed the motion. Dkt. No. 141. The Court heard oral argument on the matter on July 27, 2021, and thereafter took the motion under advisement.

MEMORANDUM OF DECISION − 1

The Court has considered the submissions and arguments advanced, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the motion. Rules 7052; 9014.[1]

*Facts*

The factual and procedural history of the underlying bankruptcy case dates back to early 2011 and, as such, is profoundly complex. Plaintiff filed for chapter 11 relief on February 3, 2011. *In re Kingston*, 11-1140128-JMM (Bankr. D. Idaho). Prior to filing his petition, in March 2007, Plaintiff purchased ten investment properties financed by ten separate loans with Countrywide Home Loans, Inc. ("Countrywide") for a property located at 5250 S. Rainbow Boulevard, Las Vegas, NV, identified as Units 1034, 1061, 1062, 1063, 1064, 2034, 2061, 2062, 2063, and 2064. Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment, Dkt. No. 135, Ex. 2 ¶ 1; *see also* Plaintiff's Statement of Disputed Facts, Dkt. No. 142.[2] BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP ("BAC") succeeded Countrywide as the servicer of the loans. *Id.* at ¶ 2. BAC was later succeeded by BANA

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

[2] In response to Caliber's statement of undisputed facts, Plaintiff submitted a statement of disputed facts. Dkt. No. 142. In his statement, Plaintiff only listed statements from Caliber's statement of undisputed facts with which Plaintiff disputed. Presumably, Plaintiff does not dispute those statements that Plaintiff does not explicitly dispute in his statement.

MEMORANDUM OF DECISION − 2

as successor by merger. *Id.* BANA serviced all ten loans up to and through Plaintiff's bankruptcy petition. *Id.* at ¶ 3.

Caliber would eventually become the servicer of Plaintiff's loan after the petition was filed for Unit 2034 and Plaintiff alleges numerous wrongdoings by Caliber with respect to that servicing. In 2018 and 2019, Plaintiff filed numerous adversary proceedings against various owners and servicers of the loan. Of relevance here, on July 27, 2021, this Court held a consolidated hearing on motions for summary judgment filed by two defendants in this case: BANA and Caliber. The Court recited its findings of fact and conclusions of law on the record with respect to BANA's motion for summary judgment.

On August 12, 2011, after Plaintiff had filed his bankruptcy petition, Plaintiff and BANA entered into a stipulation that changed the principal amount owing on various loans, reducing them to an amount below what the original contract provided. Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment, Dkt. No. 135, Ex. 2 ¶ 5–8; *see also* Plaintiff's Statement of Disputed Facts, Dkt. No. 142. The stipulation also provided for lower payment terms and was signed by Plaintiff and BANA. *Id.* at ¶ 5–7. Again, Caliber was not a party to this stipulation, but, on November 16, 2014, became the servicer of Plaintiff's account on Unit 2034. *Id.* at ¶ 30.

In resolving BANA's summary judgment motion at the consolidated hearing, the Court found three assertions in the amended complaint relevant to the summary judgment

MEMORANDUM OF DECISION − 3

motion. First, that BANA failed to implement the terms of the stipulation. Dkt. No. 151. Second, that BANA sent payment demands thereafter that were inconsistent with the stipulation and caused Plaintiff to have to respond. *Id.* Third, that BANA was "reporting" the loan incorrectly to credit agencies. *Id.*

On September 15, 2011, the first payment pursuant to the terms of the stipulation became due which Plaintiff paid in accordance with the stipulation. *Id.* On September 29, 2011, BANA sent a statement to Plaintiff that was received by Plaintiff in October 2011. *Id.* At that time, about one month after the first payment was due, BANA was not in compliance with the stipulation. *Id.* The Court found that the original breach occurred on or around the time BANA sent the statement to Plaintiff. *Id.*

There may be a question as to which is the operative document: the plan, which was confirmed on December 20, 2012, more than a year after the stipulation was approved by the Court, or the stipulation. The plan did not alter the stipulation but, rather, incorporated it and implemented the plan treatment of BANA's claim. Even if the plan is the operative document or contract, however, this Court determined at the consolidated hearing that BANA's breach was still outside the five-year statute of limitations window. *Id.* There is no dispute that Plaintiff was aware of BANA's breach as early as January 31, 2013 when he wrote a letter to BANA to notify it that there were issues with the application of loan payments. *Id*; Amended Complaint, Dkt. No. 86, ¶ 57. At the consolidated hearing, the Court determined that any alleged breaches by BANA in later

MEMORANDUM OF DECISION − 4

years arising from misapplying payment amounts ultimately stemmed from BANA's original breach that occurred when BANA began misapplying those payments. *Id.*

The Court granted BANA's summary judgment motion at the hearing based on BANA's statute of limitations defense, Dkt. No. 139, but took Caliber's motion for summary judgment under advisement.

## *Analysis and Disposition*

A. Summary Judgment Standard

The summary judgment standard is one that is well-known. Recently, the Honorable Judge Pappas addressed the standard in *Lin v. Hunt (In re Hunt)*:

> Summary judgment is properly granted when no genuine and disputed issues of material fact exist, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to judgment as a matter of law. Civil Rule 56, incorporated by Rule 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). In resolving a motion for summary judgment, the Court does not weigh the evidence, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). An issue of fact is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods.*, 247 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).
> The moving party bears the initial burden of showing there is no genuine issue of material fact. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, however, that party must show the existence of that element in order to survive a motion for summary judgment. *Id.* (citing *Celotex*, 477 U.S. at 322–23).

*Lin v. Hunt (In re Hunt)*, 2020 WL 6821784, at *2 (Bankr. D. Idaho Nov. 10, 2020).

MEMORANDUM OF DECISION − 5

Caliber argues summary judgment is proper for three distinct reasons. First, Caliber argues that the Idaho statute of limitations applies, and any alleged wrongdoing stems from BANA's original breach that occurred outside of the five-year window permitted under the Idaho statute of limitations. Second, Caliber argues Plaintiff's claim is barred by the doctrine of res judicata. Third, Caliber argues that, even if the alleged wrongdoing did happen within the statute of limitations, and the action is not barred by res judicata, Plaintiff still cannot establish the necessary elements of breach of contract.

B.     Summary Judgment Based on Statute of Limitations

At the consolidated hearing, the Court made findings of fact and conclusions of law that are relevant, at least in part, in determining Caliber's motion for summary judgment. Dkt. No. 151. For example, the parties dispute whether Nevada's or Idaho's statute of limitations should apply to this cause of action. *Id.* The Court determined that the Idaho statute of limitations applied with respect to Plaintiff's causes of action. *Id.* The Court also addressed the various arguments and authorities put forth by the parties and for the same reasons previously stated on the record at the consolidated hearing, here too, the Court concludes Idaho's statute of limitations applies. *Id.*

Idaho Code § 5-216 provides that a claim for breach of contract must be brought within five years of the breach. Thus, if the alleged breach occurred more than five years before Plaintiff brought this cause of action, Caliber's motion for summary judgment must be granted as a matter of law.

MEMORANDUM OF DECISION − 6

Under Idaho law, a cause of action for breach of contract accrues at the time of the breach. *Swafford v. Huntsman Springs, Inc.*, 163 Idaho 209, 212, 409 P.3d 789, 792 (2017); *Hall v. Forsloff*, 124 Idaho 771, 774, 864 P.2d 609, 612 (Idaho 1993).[3] In this case, the cause of action accrued when BANA began misapplying Plaintiff's payment.[4]

Plaintiff is correct that, under Idaho breach of contract principles, if there is no election to accelerate the terms of a note in the event of a breach, the five-year statute of limitations period begins to run on each installment individually. *Thomas v. Goff*, 100

---

[3] The Court is concerned with one of the arguments of Caliber's counsel in its reply brief. That counsel argued that the continuing violation doctrine does not apply, stating:

> [Plaintiff] misunderstands when the continuing violation defense applies: "The fact that a party . . . persists in its position or that the effects of its actions continue after the claim initially arose does not create a continuing violation so that the statute of limitations is re-started with each action." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 737 (9th Cir. 1986).

Dkt. No. 149. Caliber's counsel cited *Aloha Airlines*, but the quote in that case was actually addressing the issue of repeated violations of the Railway Labor Act. The full quote from that case, including the part that Defendant's counsel conspicuously omitted, states, "The fact that a party **violating the RLA** persists in its position or that the effects of its actions continue after the claim initially arose does not create a continuing violation so that the statute of limitations is re-started with each action." *Id*. (emphasis added wherein the bold font displays the omitted words). RLA is an abbreviation of the Railway Labor Act, a federal statute, and not the underlying collective bargaining agreement in that case. The Ninth Circuit clarified that the issue discussed is not the same as a breach of contract claim but rather a claim for violation of the RLA. *Id*. Thus, the argument made by Caliber regarding a federal statute not only is unhelpful to the Court, but also the excising that occurred in the quote is misleading. *See* Rule 3.3 of the Idaho Rule of Prof'l Conduct ("Candor Toward the Tribunal").

[4] Plaintiff's counsel is not free from scrutiny either. Plaintiff argues that each alleged breach of contract should be construed on its own and not relate back to BANA's original breach. Quoting Idaho case law, Plaintiff states "Wrongful acts which are separate and wholly dissimilar are separate causes of action and the statute of limitations begins to run from the time of the commission of each wrongful act." Dkt. No. 146 (quoting *Curtis v. Firth*, 123 Idaho 598, 603, 850 P.2d 749, 754 (1993)). What Plaintiff's counsel fails to illuminate, however, is that the cited case was addressing the accrual of causes of action for the commission of repeated torts as opposed to repeated breaches of contract. Counsel should be careful to distinguish the difference from a contract and a tort. *See* Rule 3.3 of the Idaho Rule of Prof'l Conduct ("Candor Toward the Tribunal").

MEMORANDUM OF DECISION − 7

Idaho 282, 596 P.2d 794 (1979). While Plaintiff attempts to invoke this argument and apply it to the facts of this case here, that principle, however, applies when the borrower breaches the contract and fails to make a required installment payment. This is different from when a lender or servicer misapplies payments towards a loan. Indeed, the servicer has an alternative remedy available. That is, the lender can accelerate the note, which would start the statute of limitations period for the entire balance of the note as opposed to a particular installment. The policy reason for allowing a lender to sue on each individual breach is to permit the parties to a contract to allow the contract to go forward and not require lenders to bring a cause of action to recover the entire amount of a note when there is simply a breach for only one payment. *See Phoenix Acquisition Corp. v. Campcore, Inc.*, 81 N.Y.2d 138, 144, 612 N.E.2d 1219, 1222 (1993). A borrower has no similar remedy. This Court can find no Idaho case law addressing the unique facts of this case, and the parties provide no case law on point. While Plaintiff argues that each bad act triggers a new statute of limitations deadline, Dkt. No. 146, p. 11, the only caselaw Plaintiff offers in support of this argument relates to tortious bad acts as opposed to breaches of contracts. *See* fn. 4. Because this case involves alleged breaches of contract and not repeat tortious bad acts, Plaintiff's argument is not persuasive.

    The Amended Complaint indicates that as late as November 2014, BANA sent notices to Plaintiff that he was behind in his payments, the same month the loan was transferred to Caliber. Amended Complaint, Dkt. No. 86. In December 2014, relying on the information provided by BANA, Caliber notified Plaintiff that he was past due on the

MEMORANDUM OF DECISION − 8

account. Tillman Decl. ¶ 6. Like BANA's subsequent breaches, Caliber's subsequent breaches stem from BANA's original breach. This outcome furthers the purpose of the statute of limitations, which, in general, "is to prevent fraudulent and stale claims from arising after a great lapse of time while preserving for a reasonable period the right to pursue a claim." *Hawley v. Green*, 117 Idaho 498, 501, 788 P.2d 1321, 1324 (1990). The Court at the consolidated hearing determined that the alleged breach of contract occurred around September 2011 and, under the relevant authorities, the cause of action for breach accrued on that date. The original complaint was filed more than five years after the cause of action accrued, and, consequently, Plaintiff' claim is barred by the statute of limitations.

Because the Court has determined that Plaintiff's claim is barred by the statute of limitations, the Court will not address Defendant's remaining arguments in support of summary judgment.[5]

## Conclusion

---

[5] Plaintiff is not necessarily left without recourse. In the main bankruptcy case, Plaintiff filed a Motion for Contempt, and subsequently an Amended Motion for Contempt (Dkt. No. 656), arguing the lenders and servicers involved with the loans are in contempt and willfully violated the automatic stay for many of the same actions alleged in this and the related adversary proceedings. "Congress did not establish any limitations period for damage claims under § 362(k)." *In re Breul*, 533 B.R. 782, 790 (Bankr. C.D. Cal. 2015); *see also Nelson v. Post Falls Mazda (In re Nelson)*, 159 B.R. 924, 925 (Bankr. D. Idaho 1993). A breach of contract is not the only action that can give rise to a violation of the automatic stay.

MEMORANDUM OF DECISION – 9

Plaintiff's cause of action is barred by the statute of limitations, and Caliber's motion for summary judgment, Dkt. No. 135, will be granted for the reasons stated above. Plaintiff's objection thereto will be overruled.

Defendant shall submit an order consistent with the holding contained in this Memorandum of Decision.

DATED: November 24, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE